A06A1559. TULLIS DEVELOPMENTS, INC. v. 3M
CONSTRUCTION, INC. et al.
(638 SE2d 787)

RUFFIN, Chief Judge.

Tullis Developments, Inc. ("Tullis") entered into a written contract to sell 13 residential lots to 3M Construction, Inc., TLM Homes, LLC, and Donald R. Barret, LLC (collectively "the Builders"). The contract included a buy-back provision. Thereafter, the Builders requested that Tullis buy back four of the lots pursuant to the buy-back provision. The parties did not close on the repurchase of the four lots because they were unable to reach agreement regarding price and other issues, including whether Tullis was responsible for costs, interest, and other fees. The Builders filed suit against Tullis for a declaratory judgment and for breach of contract. Tullis filed a counterclaim for breach of contract, and moved for summary judgment.[1] The trial court denied Tullis's motion for summary judgment as to the Builders' claim for declaratory judgment, clarified the parties' respective rights and obligations under the contract, essentially dismissed the parties' breach of contract claims, and granted a declaratory judgment to the Builders. In two enumerations of error, Tullis contends that the trial court erred in granting a declaratory judgment and in denying its motion for summary judgment. For reasons that follow, we affirm.

On appeal of the grant or denial of a motion for summary judgment, we review the evidence and law de novo.[2] "[S]ummary judgment is appropriate when the court, viewing all the facts and reasonable inferences from those facts in a light most favorable to the

---

[1] Although the Builders opposed Tullis's motion for summary judgment, they did not file a cross-motion for summary judgment.

[2] See *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003).

non-moving party, concludes that the evidence does not create a triable issue as to each essential element of the case."[3]

So viewed, the evidence shows that the parties' contract for the initial purchase of 13 lots included a special stipulation that "[i]n the event the [Builders] are unable to build on any lot or install a conventional septic tank on any lot, [Tullis] agrees to buy the lot back." After the initial purchase, the Builders asserted that four of the lots were unsuitable for conventional septic tanks and requested that Tullis buy back those lots. Although Tullis agreed to repurchase the lots, the parties ultimately did not consummate the closing because they disagreed on several issues. Specifically, the Builders insisted that Tullis pay interest, loan fees, and other fees and expenses. Although Tullis insists that it was willing to pay the closing costs for the transactions, the deposition testimony of its owners/employees belies this assertion.

Following oral argument, the trial court entered an order denying Tullis's motion for summary judgment as to the Builders' claim for declaratory judgment, finding that the contract "contain[ed] a certain degree of ambiguity regarding the 'buy-back' provision," and entered a declaratory judgment "to afford relief from uncertainty regarding the parties' respective rights and obligations under the contract." After "using the applicable rules of contract construction to resolve the ambiguity," the trial court concluded that the contract provided for a repurchase price of $52,000 per lot — the same as the original purchase price — and that Tullis was responsible for paying the closing costs associated with the repurchase transaction. The trial court also concluded that "[n]othing in the contract can be construed as requiring [Tullis] to pay for the [Builders'] expenses, lost profits, or any other costs incurred by the [Builders] as a result of their inability to build on or install septic tanks on the lots." The trial court effectively dismissed the parties' respective claims for breach of contract, concluding that they were "without merit," because the "actions of both parties contributed to the failure of the buy-back transaction."[4] Finally, the trial court stated that Tullis "shall not be excused from further performance under the contract as a result of the [Builders'] rejection of [Tullis's] tender of only the purchase price for the lots."

1. Tullis asserts that the trial court erred in granting the Builders' request for a declaratory judgment and in denying Tullis's motion

---

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[4] The trial court stated that the Builders refused to close unless Tullis paid closing costs, and additional monies, including expenses, interest, and lost profits and, although Tullis tendered the appropriate purchase price for each lot, it "balked on the payment of closing costs."

for summary judgment "based on its erroneous factual finding that [Tullis] refused to pay closing costs associated with buying back the lots."[5] We disagree.

Tullis contends that it offered to pay the closing costs and the original purchase price for each lot, thereby tendering performance under the contract, and that the Builders' refusal to accept the tender excused Tullis from future performance pursuant to OCGA §§ 13-4-23 and 13-4-24.[6] Although the trial court agreed that Tullis "tender[ed] the original purchase price for each lot at closing," it concluded that Tullis "balked on the payment of closing costs."

According to Tullis, the settlement statements prepared by the closing attorney for the attempted closing are "undisputed evidence" that Tullis "actually paid" all closing costs associated with the repurchase of the lots. Moreover, Tullis erroneously asserts that "[t]here is no evidence whatsoever" supporting the trial court's conclusion that Tullis refused to pay the closing costs. The record does not support Tullis's assertion.

Glendon Pierce Tullis testified unequivocally at his deposition that he gave his attorney a certified check for "[$]208,000, $52,000 [for] each lot" for the buy-back closing. He also testified that he "[did not] feel like" Tullis Developments should pay all of the closing costs. Glendon Jeffrey Tullis, the co-owner of Tullis Developments, also testified that Tullis Developments was only willing to pay $52,000 per lot "and that's all." Accordingly, Tullis's contentions on appeal that there was "no evidence whatsoever" to support the trial court's conclusion that Tullis refused to pay closing costs, and that the "undisputed evidence" demonstrates that Tullis offered to pay them, are not supported by the record.

The settlement statements do indicate that Tullis would pay "settlement charges," consisting of charges for abstracts or title searches, attorney fees, and recording and transfer fees. Tullis apparently maintains that the settlement statements alone constitute sufficient evidence of Tullis's tender of performance such that its performance under the contract is excused. We disagree. At best, the settlement statements are evidence that Tullis *offered* to pay the closing costs.[7] But a mere written proposal to pay, with no offer of

---

[5] Notably, neither party contends on appeal that the trial court's conclusions regarding the interpretation of the agreement were incorrect.

[6] "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." OCGA § 13-4-23.

"A tender properly made may be equivalent to performance. The tender must be certain and unconditional . . . [and] must be in full payment of the specific debt, and not in part. . . ." OCGA § 13-4-24.

[7] Tullis repeatedly asserts in its brief that the evidence demonstrates that it *offered* to pay closing costs.

money, does not constitute a tender of performance.[8] Here, Tullis has not shown any evidence that it actually tendered the closing costs to the Builders. Our review of the record indicates that Tullis prepared a certified check for the purchase price only, not for closing costs. And, the testimony of Tullis's two co-owners supports the trial court's finding that Tullis "balked" at paying the closing costs associated with the buy-back transaction and that Tullis tendered only the purchase price for the lots. Under these circumstances, Tullis's first enumeration — that the trial court's order was based upon an erroneous factual finding — is not supported by the record and presents no basis for reversal.[9]

2. In its second enumeration, Tullis alleges that the trial court erred by summarily granting the Builders' request for a declaratory judgment "without any notice, hearing[,] or trial." We find no error.

Although a trial court is permitted to grant, sua sponte, a motion for summary judgment, the grant must be

> "proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to ensure that the party against whom summary judgment is sought has had a *full and final opportunity* to meet and attempt to controvert the assertions against him."[10]

While the Builders did not seek summary judgment as to their claims, Tullis did file a motion for summary judgment, the central issue of which was the interpretation of the parties' agreement. The interpretation of the contract and the issue of whether the parties fulfilled their obligations thereunder was addressed extensively in the parties' briefs. The parties referred the trial court to evidence, including deposition transcripts and closing documents, in support of their respective positions. The trial court held a hearing on Tullis's motion for summary judgment, but, "despite having the burden on appeal to show error by the record, [Tullis] provided in its notice of

---

[8] See *Wardlaw v. Woodruff*, 175 Ga. 515, 517 (10) (165 SE 557) (1932); *Angier v. Equitable Bldg. & Loan Assn.*, 109 Ga. 625, 626-627 (2) (35 SE 64) (1900).

[9] Our review is limited solely to those issues raised in Tullis's enumerations of error. See *Williams v. State*, 178 Ga. App. 581, 587 (5) (344 SE2d 247) (1986) (appellate jurisdiction limited to legal points raised by enumerations of error).

[10] (Emphasis in original.) *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 690 (6) (500 SE2d 1) (1998).

appeal that no transcript from the motion hearing would be included in the appellate record" because there was no transcript of the hearing.[11] Without a transcript, we must assume the trial court had an adequate basis for its findings, as "[w]e cannot assume from a nonexistent . . . transcript that the trial court failed to consider" any relevant evidence or arguments.[12] Thus, Tullis had a full and final opportunity to present evidence and argument regarding the issues relevant to the Builders' claim for declaratory judgment.[13] Under these circumstances, the trial court did not err in granting the declaratory judgment.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 8, 2006.

*Webb, Tanner, Powell, Mertz & Wilson, Robert J. Wilson, Ryan K. Patrick*, for appellant.
*Gregory W. Lancaster*, for appellees.

---

[11] *AdvanceMe, Inc. v. Finley*, 275 Ga. App. 415, 417 (2) (620 SE2d 655) (2005).

[12] Id.

[13] See *AdvanceMe*, supra at 416-417; *Zarach*, supra; *Holmes v. Achor Center*, 242 Ga. App. 887, 891-892 (2) (531 SE2d 773) (2000); compare *Walker v. Virtual Packaging*, 229 Ga. App. 124, 129 (5) (493 SE2d 551) (1997) (sua sponte grant of summary judgment not proper where neither party presented legal analysis, cited legal authority, or alleged facts to support or contest the trial court's findings).