**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 3, 2014**

# In the Court of Appeals of Georgia

A14A0510. SHUFORD v. AAMES PLUMBING AND HEATING, INC.

McMILLIAN, Judge.

Sharon Shuford[1] appeals from the trial court's order granting summary judgment to Aames Plumbing and Heating, Inc. ("Aames"), on her defense and counterclaim for fraud.[2] Sharon filed the counterclaim in response to Aames's complaint seeking to recover amounts it claims are due and owing under a financing agreement, which the parties signed in connection with work Aames performed on Sharon's septic tank.

---

[1] For ease of identification, we will refer to Sharon Shuford and her husband Dan Shuford by their first names.

[2] Sharon has not appealed the grant of summary judgment on her counterclaim for deceptive trade practices.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citation and punctuation omitted.) *Secured Realty Investments v. Bank of North Georgia*, 314 Ga. App. 628, 628 (725 SE2d 336) (2012).

Viewed in that light, the evidence shows that on or about October 8, 2011, Sharon hired Aames to perform repairs on her septic tank after sewage began backing up into her kitchen and bathroom. She chose Aames because she had heard an advertisement for the company on the radio. In an affidavit submitted in opposition to Aames's motion for summary judgment, Sharon's husband, Dan Shuford, stated that the Aames representative told him that the Shufords' tank contained over 1,000 gallons of waste, and Aames's advertised price of $195 only covered the removal of up to 1,000 gallons. Accordingly, he told Dan that Aames would have to assess an additional charge of $320.96 to pump the Shufords' tank. Dan stated, however, that the tank was not actually full when the Aames representative opened it; rather, the contents were approximately nine inches from the top of the tank.

After pumping the tank, the representative told Dan that the problem was not in the tank, but rather in the field lines. He recommended, in turn, "'hydro-jett[ing]'"

the field lines, "back-pump[ing]" the field lines, and treating the lines with chemical additives. Dan explained, "At each stage, the Aames representative told me that if we did not agree to purchase [each of these services], . . . the septic system would very likely fail in days, weeks or months, but definitely in less than a year." Dan said that Sharon and he relied on "the expertise of Aames" in approving the suggested work.

The Aames representative calculated the total of these services to be $3,051.57. The Shufords gave Aames a check in the amount of $1,678.35 as their initial payment, and Sharon executed an "iCare Payment Plan Agreement" (the "Finance Agreement"), under which she incurred an additional $152.56 administration fee, for the balance. Subsequently, however, the Shufords learned that their septic tank, in fact, held only 750 gallons, and they decided to stop payment on their check.

At some later point, Dan complained to the District Supervisor of Northwest Georgia Public Health ("GPH"), alleging that Aames had performed unnecessary work and charged excessive prices. Dan was later copied on a letter dated October 21, 2011, sent to Aames from Virgil Fancher, a program consultant for GPH's Environmental Health Section (the "GPH letter"). In that letter, Fancher stated that "the State Office of Environmental Health does not recognize the use of additives as an approved method of repair or maintenance to onsite-sewage management systems.

In addition, it does not recommend, nor approve of jetting as a means to repair or extend the life of a drainfield."

The Shufords also filed the affidavit of C. L. Tidwell in opposition to Aames's motion. Tidwell averred that he had been involved in the installation and maintenance of septic systems for over 50 years, during which time he had both installed and serviced over 5,000 septic tank systems. Tidwell stated that he was familiar with industry standards, regulations, and recommended "Health Department" procedures. He said that the Shufords had a 750-gallon tank and that such a tank will not hold 1,000 gallons of waste. Moreover, he averred that any service provider with even "the most basic experience" can identify the difference between a 1,000-gallon tank and a 750-gallon tank "just by looking." He also said that, based on his experience, he is unaware of any benefit whatsoever in hydro-jetting and/or back-pumping field lines, or in adding any chemical additives to the septic field, noting that these procedures are not recommended by the State of Georgia.

Aames moved for summary judgment on its complaint, without addressing Sharon's counterclaim.[3] In opposing Aames's motion, Sharon submitted affidavits to

[3] The appellate record originally received from the trial court did not contain Aames's motion for summary judgment. Upon request of this Court for all summary judgment pleadings, the trial court supplemented the record with a motion for

4

support her affirmative defense of fraud. Without a hearing, the trial court denied Aames's motion "as to [Sharon's] defenses of Lack of Consideration and Estoppel regarding alleged contractual obligations stemming from services rendered by [Aames] to [Sharon]," finding that genuine issues of material fact remained. The trial court, however, granted summary judgment to Aames on Sharon's fraud defense and, sua sponte, on her counterclaim for fraud, finding, without further explanation, that Sharon failed to meet her burden of proving every element of the tort. Because Aames did not appeal the denial of its motion for summary judgment, we will confine our consideration to the grant of summary judgment on Sharon's fraud defense and counterclaim.

1. We first address the issues Aames raises on appeal with regard to the admissibility of the evidence contained in the affidavits of Dan and Tidwell, which Sharon filed in opposition to Aames's motion for summary judgment. Aames asserts that Dan's affidavit "merely recited hearsay evidence about the possible mental state of [Sharon]" and contains statements not made within Dan's personal knowledge. In particular, Aames takes issue with Dan's averment that his wife "contacted Aames

_____

summary judgment filed by Aames on July 10, 2013, which does not address Sharon's counterclaim. It is this Court's understanding that this was the only summary judgment motion filed by either party below.

5

because she recognized their name and remembered their advertisement for pumping a septic tank for $195.00," and with his statement that they both relied on the representations of the Aames representative in deciding to approve the services he recommended. Aames also asserts that Tidwell's affidavit failed to establish his qualifications as an expert in the field of septic tank repair, and thus it "offers only inadmissible opinion evidence at best and inadmissible hearsay at worst."

However, Aames has failed to cite to any objections it raised to the affidavits in the trial court; therefore, it has waived any objection to any alleged hearsay by failing to object on that ground below. OCGA § 24-8-802. Similarly, "'[o]bjections to affidavits such as an objection to the affiants' lacking personal knowledge will not be entertained for the first time on appeal where such affidavits were considered by the trial judge, without objection, in ruling on motions for summary judgment.' *Chapman v. McClelland*, 248 Ga. 725, 726 (2) (286 SE2d 290) (1982)." (Punctuation omitted.) *Formaro v. SunTrust Bank*, 306 Ga. App. 398, 399-400 (1) (702 SE2d 443) (2010).[4] Likewise, by failing to object to any opinion evidence or lack of foundation

_____

[4] Moreover, even where, as here, the affidavits fail to recite that they were made on the affiant's personal knowledge, we will consider the affidavit on appeal where no objection was raised below and "it is obvious that most of the contents and facts set forth therein were within the personal knowledge of the affiant[.]" *Johnson v. Crews*, 165 Ga. App. 43, 44 (299 SE2d 99) (1983). See also *Reese Realty Co., Inc.*

for expert opinion evidence in Tidwell's affidavit, Aames has waived such objections for purposes of summary judgment. "[T]here is no more fundamental principle of appellate review than that preventing consideration of evidentiary objections not raised before the trial court and contained in the record on appeal. This rule is, of course, equally applicable to evidence offered in support of or in opposition to a motion for summary judgment." (Citations and punctuation omitted.) *Perry v. Intl. Indem. Co.*, 169 Ga. App. 818, 819 (1) (315 SE2d 13) (1984).

In any event, we note that Aames concedes the most pertinent of Tidwell's averments, expressly stating that it does not dispute "that [the Shufords'] septic tank may hold only 750 gallons," "that it is impossible that a container which can hold only 750 gallons could ever hold 1,000 gallons," or "that a septic tank servicer with only minimal training should be able to discern immediately upon sight the difference between a 750 gallon and a 1,000 gallon septic tank."

Accordingly, we find that Aames has failed to establish a basis for disregarding these affidavits.

---

*v. Pal Realty Co., Inc.*, 182 Ga. App. 215, 217 (2) (355 SE2d 125) (1987). Here, "it is clear from the context of the affidavits, [that most of the facts asserted] are within the personal knowledge of [Dan or Tidwell] and are to be considered notwithstanding the absence from the affidavits of a statement that the affidavit is based on personal knowledge." *Reese Realty*, 182 Ga. App. at 217 (2).

2. Turning next to the issue of whether summary judgment was appropriate on Sharon's fraud defense and counterclaim, we will address each issue separately.

(a) *Fraud defense.* Once Sharon submitted evidence and briefed the issue of her affirmative defense of fraud in response to Aames's summary judgment motion, Aames had the burden of demonstrating that the fraud defense did not defeat its claim.

> For purposes of summary judgment, although the movant might satisfy its original burden of showing a prima facie right to recover, if the respondent successfully produces rebuttal evidence in the form of an affirmative defense, the burden shifts back to the movant to establish the non-existence of a genuine issue of fact as to each affirmative defense.

(Citation omitted.) *Helton v. Jasper Banking Co.*, 311 Ga. App. 363, 364 (715 SE2d 765) (2011). Although Aames made no effort to carry this burden, the trial court nevertheless granted summary judgment on Sharon's affirmative defense of fraud.

Sharon seeks to avoid enforcement of the Finance Agreement because she asserts that she was fraudulently induced into signing it. And

> [t]o justify rescission of a contract for fraud in the inducement, the party seeking rescission must prove that the party with whom it contracted made a knowingly false representation; that it did so with the intent of inducing the first party to act in reliance on the deliberate

8

misrepresentation; and that the first party justifiably relied on the misrepresentation, to that party's detriment. *Champion Windows of Chattanooga, LLC v. Edwards*, 326 Ga. App. 232, 236 (1) (756 SE2d 314) (2014). And this Court has recognized that

[g]iven that fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case. Proof of fraud is seldom ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required. Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud.

(Citation omitted.) *Levine v. Suntrust Robinson Humphrey*, 321 Ga. App. 268, 274 (2) (a) (740 SE2d 672) (2013). Applying these principles to the evidence of record, we find that issues of fact remain precluding summary judgment on this affirmative defense.

(i) *Knowingly false representation.* According to Dan, Aames's representative told him that Aames's advertised price of $195 did not apply in his case because the Shufords' septic tank contained over 1,000 gallons of matter. But as Aames concedes, the Shufords' septic tank had a capacity of only 750 gallons, and a septic tank servicer with only minimal training should be able to discern "immediately upon sight" the difference between a 750 gallon and a 1,000 gallon septic tank. Thus, a factual question exists as to whether Aames knowingly misrepresented the situation.

9

Additionally, the representative told Dan that hydro-jetting, back-pumping, and additives for the field lines were necessary to prevent further problems with the septic system, but Tidwell's affidavit and the GPH letter raise questions as to whether some of these services were State-approved or necessary to repair the Shufords' septic tank and whether Aames knowingly misrepresented that they were required. We note that "[e]xcept in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury determination." (Citation omitted.) *Levine*, 321 Ga. App. at 274 (2) (a). Because this is not a plain and indisputable case, this issue is for the jury.

(ii) *Intention to induce the Shufords to act*. "The intent which constitutes an essential element of fraud is an intent that the representation be acted upon by the other party[, and it] is a jury question except in plain and palpable cases." (Citations omitted.) *Bill Spreen Toyota, Inc. v. Jenquin*, 163 Ga. App. 855, 859 (3) (294 SE2d 533) (1982). Here, the evidence raises genuine issues of material fact as to whether Aames intended to induce the Shufords to pay an upcharge in excess of $195 for pumping the septic tank by representing that the tank held more than 1,000 gallons. Similarly, the evidence indicating that some of the procedures performed by Aames were unnecessary or disapproved for the Shufords' system creates additional jury issues as to whether the agent made misrepresentations with the intent of inducing the

10

Shufords to agree to unnecessary, expensive charges. Thus, an issue of fact also exists as to whether any such misrepresentations were made with the intent to induce Sharon to sign the Finance Agreement.

(iii) *Justifiable reliance*. We find that the evidence presents jury issues on this element as well. The general rule in Georgia is "that actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party." (Emphasis in original.) *Florida Rock & Tank Lines, Inc. v. Moore*, 258 Ga. 106, 106 (1) (365 SE2d 836) (1988). In *Florida Rock*, our Supreme Court cited with approval the Restatement of Torts (2d) § 533, which provides a limited exception to the general rule:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and *the maker intends or has reason to expect that* its terms will be repeated or *its substance communicated to the other,* and that it will influence his conduct in the transaction or type of transaction involved.

(Emphasis in original.) Id. at 106 (1), n. 1.

Although the representations by Aames were made to Dan, he averred that he "advised my wife Sharon Shuford of all the facts" stated by Aames. Sharon testified

11

that she thereafter signed the Invoice and executed the Finance Agreement because she understood that "if [she] signed the contract, they were going to fix the septic tank." Thus, under *Florida Rock*, we find that genuine issues of material fact exist as to whether Aames intended or had reason to expect that its representations to Dan would be conveyed to Sharon and that those representations would influence her to enter into the Finance Agreement.

(iv) *Detriment.* Here, the detriment at issue is Sharon's potential contractual obligation to pay approximately $3,000 for charges and services that she claims were unnecessary and fraudulently induced.

Accordingly, we conclude that the trial court erred in granting summary judgment to Aames on Sharon's fraud defense because genuine issues of fact remain for the jury.

(b) *Counterclaim.* To establish her counterclaim of fraud, Sharon must show

> a false representation by [Aames], scienter, intention to induce [Sharon] to act or refrain from acting, justifiable reliance by [Sharon], and damage to [Sharon]. For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.

(Citation omitted.) *Roberts v. Nessim*, 297 Ga. App. 278, 284 (1) (676 SE2d 734) (2009). And a defendant-in-counterclaim, such as Aames,

> demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff[-in-counterclaim]'s case. The defendant [in counterclaim] does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence.

(Citation omitted.) *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 248-249 (699 SE2d 439) (2010). But Aames neither moved for summary judgment on Sharon's counterclaim nor otherwise addressed it in the trial court; thus, Aames has not carried this burden.

Nevertheless, the trial court, acting sua sponte, granted summary judgment on the counterclaim. A trial court's power to grant a motion for summary judgment sua sponte is not unlimited. *Hodge v. SADA Enterprises, Inc.*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995). Rather,

> [t]he grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.

13

(Citations and punctuation omitted.) Id. And because Aames never moved for summary judgment on the counterclaim, Sharon had no burden

> to respond to issues which [were] not raised in the motion for summary judgment or to present its entire case on all allegations in the [counterclaim] – even on issues not raised in [Aames's] motion. Indeed, until [Aames] pierced the allegations of [Sharon's counterclaim] on a particular issue, [she] was neither required to respond to the motion on that issue, nor required to produce evidence in support of [her counterclaim] on that issue.

(Citations omitted.) Id.

We have found that genuine issues of fact remain with regard to Sharon's fraud defense, but we find that the trial court acted prematurely in considering her counterclaim on summary judgment because she was not given full and fair notice and an opportunity to address all the elements of her counterclaim for fraud, which may require additional evidence. Accordingly, we find that the trial court erred in granting summary judgment to Aames on Sharon's counterclaim.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*