**FIRST DIVISION**
**ANDREWS, J.**
**RAY and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2017**

# In the Court of Appeals of Georgia

A16A1530. MASHBURN CONSTRUCTION, L.P. et al. v. CHARTERBANK.

REESE, Judge.

In this action seeking a deficiency judgment on a note following a foreclosure sale, the trial court granted summary judgment to CharterBank and against Mashburn Construction, L.P., and two guarantors of the note, Ray Mashburn and Philip Denney. On appeal, Mashburn Construction and the guarantors (collectively, "Appellants") contend that the trial court's evidentiary rulings constituted error and that jury issues existed as to whether CharterBank ("Appellee") was entitled to a deficiency judgment and, if so, the amount to which it was entitled. For the reasons set forth, infra, we affirm in part and reverse in part, and remand this case for further proceedings.

Viewed in the light most favorable to Appellants, as the parties opposing summary judgment,[1] the record shows the following facts. In June 2007, Mashburn Construction borrowed $958,690 from McIntosh Commercial Bank ("MCB"). Mashburn and Denney executed unconditional personal guarantees of the note. In addition, the note was secured by real property in Fulton County.

Mashburn Construction defaulted on the note, and Appellee, as MCB's successor-in-interest, instituted foreclosure proceedings.[2] On September 7, 2010, the property was sold at a foreclosure sale for $725,000. Appellee filed a petition to confirm the sale in the Fulton County Superior Court, pursuant to OCGA § 44-14-161 (a).[3] The Fulton County court conducted a hearing on the petition and confirmed the

---

[1] See *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

[2] On appeal, Appellants do not dispute that Appellee is the successor-in-interest to MCB or that Appellee is the proper plaintiff in this action.

[3] OCGA § 44-14-161 (a) provides that, "[w]hen any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds . . . and at the sale the real estate does not bring the amount of the debt secured by the deed, . . . no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.").

sale,[4] finding, inter alia, that the sales price was at least equal to the true market value of the property at the time of the sale.

Appellee then filed the instant action, seeking a deficiency judgment against Appellants for the difference between the amount they owed on the note and the proceeds from the foreclosure sale. After Appellants answered the complaint and denied any further liability on the note, Appellee filed a motion for summary judgment. Appellee supported its motion with the affidavit of its manager, James Chandler. Attached to Chandler's affidavit were several documents, including one (hereinafter, "Exhibit G") generated from MCB's computerized account record for the note that showed the payment history for the note since its inception. Also attached to the affidavit was a daily interest calculation on a spreadsheet ("Exhibit H") that was produced by Appellee and showed the principal and interest due and payable on the note, as well as the variable interest rate that applied each day during the term of the note.

---

[4] See OCGA § 44-14-161 (b), (c) (at the hearing, the court shall require evidence to show that the property brought its true market value at the foreclosure sale and shall also pass upon the legality of the foreclosure sale notice, the advertisement, and the regularity of the sale).
In May 2012, this Court affirmed the Fulton County order in the foreclosure confirmation action.

In opposition to the motion for summary judgment, Appellants asserted, among other things, that Appellee had failed to present competent evidence of the amount due on the note because Exhibit H contained errors and constituted inadmissible hearsay. In response, Appellee submitted a second affidavit by Chandler in which he admitted that there were incorrect calculations in Exhibit H, explaining that the proceeds of the foreclosure sale should have been applied to interest charges first. According to this second affidavit, Chandler had corrected the "typo" in Exhibit H and had created a revised spreadsheet, which was attached to the affidavit ("Exhibit O"). In addition, Chandler attached to the affidavit a new document ("Exhibit P") showing the loan transaction history with all interest rate changes since the note's inception.

After conducting a motion hearing,[5] the trial court granted summary judgment to Appellee, awarding it $581,420 in principal and interest, plus accrued interest, late charges, and attorney fees. This appeal followed.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in

---

[5] Appellants did not file a transcript of the hearing on the motion for summary judgment to be included in the appellate record.

the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[6]

With these guiding principles in mind, we turn now to Appellants' specific claims of error.

1. Appellants contend that the trial court erred when it disregarded evidence that, prior to the foreclosure sale, Appellee breached an agreement to accept the proceeds of a "short sale" of the property to a third party and to forgive the balance of the note. They argue that they presented evidence during the summary judgment hearing to show that the agreement provided that, after Appellee accepted the proceeds of the short sale, it would release its mortgage on the property and release Appellants from any further obligations that existed under the note and guarantees, including any potential deficiency. Appellants claim that they also showed that Appellee breached the agreement and improperly proceeded with the September 2010 foreclosure sale. Appellants argue that, because they presented evidence of

---

[6] *Benton*, 280 Ga. at 470 (citations omitted).

Appellee's breach during the summary judgment hearing, a jury issue existed as to whether Appellee was estopped from seeking a deficiency judgment for the balance due on the note.

Appellants cannot prevail on this argument, however, because they have failed to include a transcript of the summary judgment hearing in the record on appeal. "Without a transcript, we must assume the trial court had an adequate basis for its findings, as we cannot assume from a nonexistent transcript that the trial court failed to consider any relevant evidence or arguments."[7] Consequently, this alleged error presents no basis for reversing the trial court's order.

2. Citing OCGA § 24-8-803 (6), the business records exception to the hearsay rule, Appellants contend that the trial court erred in considering Exhibit O, the calculation of damages attached to Chandler's second affidavit, because it constituted inadmissible hearsay. Appellants have failed, however, to show by the record that they raised this hearsay objection in the court below. The record contains no motion challenging the admissibility of Chandler's second affidavit or Exhibit O, and, without a transcript, Appellants are unable to show that they raised the issue during

---

[7] *Tullis Devs. v. 3M Constr.*, 282 Ga. App. 335, 339 (2) (638 SE2d 787) (2006) (punctuation and footnote omitted).

the summary judgment hearing.[8] Moreover, the trial court's order does not include a ruling on the admissibility of "Exhibit O."[9]

"There is no more fundamental principle of appellate review than that preventing consideration of evidentiary objections not raised before the trial court and contained in the record on appeal."[10]

> A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed. It cannot be presumed from a silent or non-existent transcript of a hearing below that a proper objection was interposed[.][11]

---

[8] See *Tullis Devs.*, 282 Ga. App. at 339 (2).

[9] See *Champion Windows of Chattanooga v. Edwards*, 326 Ga. App. 232, 242 (2), n. 9 (756 SE2d 314) (2014) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (citation and punctuation omitted).

[10] *Shuford v. Aames Plumbing & Heating*, 327 Ga. App. 844, 847 (1) (761 SE2d 395) (2014) (citation and punctuation omitted).

[11] *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999) (footnotes omitted).

Consequently, if a party fails to show that it properly preserved its hearsay objection, the objection shall be deemed waived, and the evidence shall be considered legal and admissible.[12]

In this case, Appellants have failed to show that they raised a hearsay objection to Exhibit O under OCGA § 24-8-803 (6), and that it was overruled by the trial court. Consequently, this issue is deemed waived for the purposes of the instant appeal.

3. Appellants contend that the trial court erred in granting summary judgment to Appellee, arguing that it failed to prove its damages as a matter of law.

> Where a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty. Thus, in a suit to enforce a promissory note or guaranty, the plaintiff has the burden of proving that the defendant is indebted to him and in a definite and correct amount.[13]

---

[12] See OCGA § 24-8-802; see also *Shuford*, 327 Ga. App. at 846-847 (1) (In a company's action to recover for services performed, the company failed to object to affidavits supporting the debtors' defense of fraud by the company and, therefore, the company waived its objection to alleged hearsay under OCGA § 24-8-802.).

[13] *Patrick Malloy Communities v. Community & Southern Bank*, 334 Ga. App. 76, 82 (2) (778 SE2d 242) (2015) (citations and punctuation omitted).

(a) According to Appellants, they presented evidence that conflicted with Appellee's evidence of the base rate that MCB, the original creditor and Appellee's predecessor-in-interest, used to calculate the variable interest rate on the note. The note contained the following language:

> INTEREST: I agree to pay interest on the outstanding principal balance from 06/27/2007 at the rate of 8.750 % per year until INDEX RATE CHANGES.

> Variable Rate: This rate may then change as stated below.

> Index Rate: The future rate will be 0.50 % ABOVE the following index rate: Lender's Prime, the base rate used by Lender to set interest rates at which loans are made to various borrowers. . . .

> Frequency and Timing: The rate on this note may change as often as daily. A change in the interest rate will take effect the day the index rate changes.

Appellants argue that the affidavit of William H. Gafford, Jr., creates a question of fact as to what is meant by "Lender's Prime." Gafford served as MCB's president and chief executive officer, and was a director from November 2002 until August 2008. In his affidavit, he testified that MCB used the term "Lender's Prime" to refer to the United States prime interest rate as published by the Wall Street

Journal, and that the United States prime interest rate changed to 3.25 percent on December 16, 2008, and had remained at 3.25 percent since that time.

Gafford's testimony, however, simply contradicted the unambiguous definition of "Lender's Prime" in the note itself: "the base rate used by Lender to set interest rates at which loans are made to various borrowers." "A promissory note is an unconditional contract to pay, and parol evidence cannot be admitted to alter its terms."[14] Here, the rate of interest was clearly set out in the note as 0.5 percent above MCB's base lending rate. And Appellee presented evidence of the base lending rate during the life of the loan, including the affidavit of Nicholas Clark, who was the chief financial officer of MCB from November 2002 until March 26, 2010, before becoming a senior vice president of Appellee. Clark testified that MCB's Lender's Prime was the same as the Wall Street Journal prime rate until December 2008, when the executive committee of the bank voted to hold "Lender's Prime at 4.00 percent while WSJ Prime declined to 3.25 percent." According to Clark, in February 2009, the executive committee of the bank increased Lender's Prime to 6 percent. Clark

---

[14] *Kothari v. Patel*, 262 Ga. App. 168, 175 (4) (585 SE2d 97) (2003) (citation omitted).

testified that Gafford was not privy to the rates the bank set for Lender's Prime following his August 2008 departure from the bank.

Clark attached to his affidavit the minutes of a December 16, 2008 executive committee meeting, which reflected the decision to hold the rate at 4 percent; the minutes of a December 30, 2008 executive committee meeting, which reflected a proposal to increase Lender's Prime from 4 percent to 6 percent; the minutes of a January 6, 2009 executive committee meeting, which reflected the decision to increase Lender's Prime to 6 percent; and the minutes of a January 13, 2009 executive committee meeting, which reflected that the change in Lender's Prime became effective on January 12, 2009. Clark also attached a January 14, 2009 schedule of interest rates that reflected the Wall Street Journal Prime Lending Rate of 3.25 percent and the Lender's Prime Rate of 6 percent.

"Although [at the time they entered the note] the future monthly-determined rate could not be known in advance, the parties agreed that it be this particular rate, for which there was an established mechanism for its determination."[15] "[W]here a written contract is plain and unambiguous, it is the only evidence of what the parties

---

[15] *1600 Capital Co. v. Bankers First Fed. Sav. & Loan Assn.*, 187 Ga. App. 504, 506 (370 SE2d 668) (1988).

11

intended and understood by it. In the absence of fraud, accident or mistake, parol evidence cannot be considered to alter or vary the terms of a promissory note."[16]

The promissory note at issue here is not ambiguous, and Gafford's representations regarding the interest rate are inadmissible to contradict or vary its terms.[17] Consequently, this alleged error lacks merit.

(b) Appellants also argue that there are conflicts and gaps in the evidence regarding the calculation of damages on the note and, therefore, summary judgment was not authorized. We agree.

As an initial matter, the second affidavit submitted by Appellee's manager, Chandler, asserted that Appellants owed $563,155.11 in principal and interest on the note "[a]s of November 1, 2014," and referenced Exhibit O as the source of those figures. However, the calculation of damages spreadsheet in Exhibit O ends on October 15, 2011, so it does not support Chandler's assertion.

> [W]here records relied upon and referred to in an affidavit are neither attached to the affidavit nor included in the record and clearly identified in the affidavit, the affidavit is insufficient. . . . Where an affidavit is

---

[16] *Parker v. Cook*, 248 Ga. App. 621, 622 (548 SE2d 387) (2001) (citations and punctuation omitted).

[17] See *Parker*, 248 Ga. App. at 622.

based in part on records, the balance owed on the debt cannot be established on summary judgment by means of an affidavit which referred to the records but did not have the records attached.[18]

Even pretermitting whether portions of Chandler's second affidavit were invalid as to any date after October 15, 2011,[19] the record shows discrepancies in the evidence relied upon by Appellee. For example, Appellee's records show a substantial inconsistency between figures in Exhibits O and P, which were attached to Chandler's second affidavit. Appellee's calculation of damages in Exhibit O shows that, on May 14, 2010, the principal balance on the note was $956,572.11, the accrued interest was $181,916.02, and the payoff balance was $1,138,488.13. In contrast, Exhibit P, the Loan History Card, shows that, on May 14, 2010, the principal balance on the note was $948,805, the accrued interest was $60,649.37, and the payoff amount was $1,009,704.37.

---

[18] *Powers v. Hudson & Keyse*, 289 Ga. App. 251, 252 (1) (656 SE2d 578) (2008) (punctuation and footnotes omitted). See OCGA § 9-11-56 (e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.").

[19] See *Ware v. Multibank 2009-1 RES-ADC Venture*, 327 Ga. App. 245, 250 (2) (758 SE2d 145) (2014) ("[E]ven where a portion of [a party's] affidavit is inadmissible, that fact does not invalidate the entire affidavit.") (citation omitted).

13

Moreover, according to Exhibit O, the principal due on the note on October 15, 2011, was $434,878.14, and the accrued interest was $34,162.09, which should have totaled $469,040.23. Yet, in the column purporting to show the payoff amount for the note on October 15, 2011, Exhibit O gives a total of $468,955.68.

"While there may be an explanation for these discrepancies, [Appellee] does not offer one, even though it bears the burden of proving its damages in a definite and certain amount."[20] Because the discrepancies are material to the amount of unpaid principal (as foreclosure proceeds were applied to interest first), interest, and contractual attorney fees (which are calculated as a percentage of the principal and interest) owed by Appellants, we conclude that material issues of fact exist as to the amount of damages.[21]

Accordingly, we affirm the grant of summary judgment to Appellee on Appellants' liability on the note and guarantees and as to the interest rates to be

---

[20] *Patrick Malloy Communities*, 334 Ga. App. at 83 (2) (citation omitted).

[21] See id.; see also *Fowler v. Ford Motor Credit Co.*, 180 Ga. App. 738, 739 (350 SE2d 319) (1986) (In a suit on a lease contract, the creditor submitted a document that purported to show the amount owed by the debtor on the contract. The document, however, contained an obvious calculation error that resulted in an amount greater than the maximum amount the debtor could have possibly owed on the contract. Consequently, the trial court erred in granting summary judgment to the creditor and awarding it an amount that was not supported by competent evidence.).

14

applied to the outstanding principal, but we reverse the grant of summary judgment to Appellee as to the amount of damages owed on the note and guarantees, and we remand the case for proceedings not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded. Andrews and Ray, JJ., concur.*