NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 16, 2025

S25A0600.  DEES v. THE STATE.

PINSON, Justice.

Roy Blane Dees was convicted of felony murder and aggravated assault for the killing of Jimmy Vance.[1] On appeal, Dees challenges the admissibility of testimony from police officers who recounted what they had been told by witnesses at the crime scene. Although no one objected to the officers' testimony at trial, Dees now contends

---

[1] Vance was attacked on May 16, 2021 and died a few days later. On July 12, 2022, a Rockdale County grand jury indicted Dees for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on aggravated battery (Count 3), aggravated assault (Count 4), and aggravated battery (Count 5). Dees was tried before a jury on September 11 and 12, 2023. The jury found Dees guilty of felony murder predicated on aggravated assault and of aggravated assault, and found him not guilty of all other charges. Dees was sentenced to life in prison without the possibility of parole for the felony murder count, and the other count merged for sentencing. Dees filed a timely motion for new trial, which he later amended through new counsel. The trial court denied the motion for new trial on November 22, 2024. Dees filed a timely notice of appeal. The appeal was docketed to the April 2025 term of this Court and set for oral argument on June 10, 2025.

that the testimony was inadmissible hearsay and that the trial court committed plain error by allowing it. That claim fails because no relevant controlling authority required the trial court to exclude hearsay testimony when no party had made a hearsay objection. Dees therefore cannot show plain error, and so we affirm his convictions.

1. The evidence at trial showed the following. Vance was working one afternoon in the yard in front of his home. Suddenly, Dees, who was known around the neighborhood, came into the yard and hit Vance several times in the head with a hammer. Vance died of his injuries a few days later.

Four neighbors saw or heard the attack and testified at Dees's trial. Two of them, Tevin Williams and Walter Baisden, testified that they were on Vance's front porch at the time. They saw Dees hit Vance three times with the hammer while Vance was near the back of a van. Dees then either dropped the hammer (according to Tevin) or threw it in the back of the van (according to Baisden). Tevin said to Dees, "[W]hat the f**k are you doing man," but Dees

2

did not respond. Dees left the property and headed back in the direction he had come from. Both Tevin and Baisden identified Dees as the attacker at trial.

Another neighbor, Raymond Williams, testified that he did not see the attack directly. He was across the street from Vance's home when he heard "hollering" coming from Vance's yard. But a big tree blocked Raymond's view of Vance's yard, so he could not tell who was yelling or what the trouble was. All Raymond could see was "a trailer and a van."

The fourth neighbor, Melissa Smith, testified that she saw the attack from down the street. Smith could see the van parked in front of Vance's home, although Smith, unlike Raymond, testified that the van did not have a trailer. (Photos from the scene confirmed that the van had a trailer.) Smith saw Dees get into the back of the van with a hammer and start "hitting on something" with the hammer. When Dees got out of the van, Smith saw Tevin say something to him, and then Dees "power walked" down the street to another house. At trial, Smith identified Dees as the attacker, just as Tevin and Baisden

had.

After the attack, Tevin called 9-1-1, and that call was played for the jury. In the call, Tevin was heard telling the operator that the attacker was a male, wearing a black hoodie and blue jeans, whom Tevin thought was named "Blane," and that the attacker had left the scene and gone "two houses down."

Responding officers interviewed Tevin, Raymond, and Smith at the scene. Portions of the officers' bodycam footage, which captured these interviews, were played for the jury. The officers also testified at trial about what they learned from the witnesses. According to the officers, the witnesses said that a man they knew as "Blane" had attacked Vance with a hammer, seemingly without provocation. The witnesses described Blane as a male with tattoos and "salt and pepper hair" who was wearing jeans and a cut-off hoodie. They told the officers that after the attack, Blane had gone to a white house a few houses down the street.

The officers testified that they went to the white house down the street. Dees was not there, but the officers spoke with Dees's

girlfriend at the time, who lived in the home. She told them that she and Dees had taken methamphetamines the night before. (The girlfriend also testified at trial and confirmed that she and Dees had taken methamphetamines the night before the attack.) Then the officers saw a man at the end of the street "sprinting" toward an area of the neighborhood where there were no homes. The officers chased the man but did not catch him. Later that afternoon, Dees was found at a nearby gas station and placed under arrest.

2. On appeal, Dees contends that the trial court erred by allowing the investigating officers to testify about what they were told at the scene by the various witnesses. Although Dees did not object to the officers' testimony at trial, he now contends that the testimony was inadmissible hearsay, see OCGA § 24-8-801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"), and that the trial court should have excluded it.

Because Dees did not object at trial, our review is for plain error only. See OCGA § 24-1-103(d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."); *Hassan v. State*, 318 Ga. 673, 677–78 (2024) (reviewing the admission of un-objected-to hearsay testimony for plain error). To show plain error, Dees must show that the trial court made an error that (1) was not affirmatively waived, (2) was "clear and obvious," which generally means there must be "on-point controlling authority" or "the unequivocally clear words of a statute or rule" that "plainly establish that the trial court erred," (3) likely affected the outcome of the trial, and (4) "seriously affected the fairness, integrity, or public reputation of judicial proceedings." See *Hill v. State*, 321 Ga. 177, 181–82 (2025) (quotation marks omitted).

Dees's claim fails at the second part of the plain-error test. The trial court did not commit a clear and obvious error by failing to exclude the officers' testimony as hearsay because the relevant authority did not make clear that the trial court was required to exclude

6

this hearsay evidence when no one raised a hearsay objection.

To begin with, the general statutory rule for hearsay at OCGA § 24-8-802 (Rule 802) states that "[h]earsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." Rule 802 thus says in plain language that hearsay evidence "shall be legal evidence and admissible" if no proper objection is made, which indicates that it is not error for a trial court to fail to exclude it.

Our decisional law has little to say on this question. In our decisions reviewing for plain error a trial court's failure to exclude unobjected-to hearsay, we have never held that the trial court clearly and obviously erred. We also have never held that the trial court *could not* have erred because of Rule 802. In fact, as far as we can tell, we have not grappled with that aspect of Rule 802. Instead, in our past decisions, we have apparently assumed that the trial court *could* have clearly and obviously erred, and then determined that

7

the appellant's claim of plain error still failed for one reason or another. See, e.g., *Kirkland v. State*, 318 Ga. 639, 655 (2024) (no clear and obvious error to admit un-objected-to hearsay because the jury was properly instructed that they could consider the hearsay statement only against the declarant); *Merritt v. State*, 311 Ga. 875, 887 (2021) (no clear and obvious error to admit un-objected-to hearsay because the trial court could conclude that the statements had sufficient guarantees of trustworthiness to satisfy the residual hearsay exception under OCGA § 24-8-807); *Varner v. State*, 306 Ga. 726, 731–32 (2019) (no clear and obvious error to admit un-objected-to hearsay because the out-of-court statements qualified for the hearsay exception for present-sense impressions under OCGA § 24-8-803 (1)). Cf. *Grier v. State*, 313 Ga. 236, 240–41 (2022) (trial court clearly and obviously erred by failing to exclude an un-objected-to out-of-court statement, not because the statement was hearsay, but because it violated the Confrontation Clause of the Sixth Amendment to the United States Constitution). The Court of Appeals, for its part, has held in one decision that a trial court committed plain error by

failing to exclude hearsay to which no one had objected, thus implicitly concluding that the un-objected-to hearsay in that case was *not* admissible, see *Sullins v. State*, 347 Ga. App. 628, 630–33 (2018), but that court has also held in earlier decisions that un-objected-to hearsay *is* admissible under Rule 802, see *Mashburn Constr., L.P. v. CharterBank*, 340 Ga. App. 580, 583 (2017) ("[I]f a party fails to show that it properly preserved its hearsay objection, the objection shall be deemed waived, and the evidence shall be considered legal and admissible." (citing Rule 802)); *Williams v. State*, 336 Ga. App. 442, 449 (2016) ("Under the new Evidence Code, hearsay if unobjected to is admissible." (citing Rule 802)). And to the extent Court of Appeals decisions are in conflict, earlier decisions control over later ones. See *White v. State*, 305 Ga. 111, 121 (2019).

In short, the authority pertaining to un-objected-to hearsay is a mixed bag. We have a statute that indicates on its face that unobjected-to hearsay is "admissible," no decisions of this Court holding one way or the other that a trial court can err by failing to exclude unobjected-to hearsay sua sponte, two Court of Appeals decisions

9

holding that un-objected-to hearsay is admissible under the statute, and one Court of Appeals decision that holds otherwise, but without grappling with the statute. This appeal, however, does not require us to answer definitively whether, given the language of Rule 802, a trial court could *ever* err by failing to exclude un-objected-to hearsay. Instead, because we are reviewing for plain error, the question is only whether "on-point controlling authority" makes it "unequivocally clear" that the trial court here erred by admitting the un-objected-to hearsay at issue. See *Hill*, 321 Ga. at 181–82. Given the mix of relevant authority here, it is not clear or obvious that the trial court was required to step in and exclude the hearsay absent an objection.

Because no controlling authority made it clear that the trial court had to exclude the un-objected-to hearsay in this case, the court did not commit a clear and obvious error by failing to exclude it. Dees's claim of error therefore fails.

*Judgment affirmed. All the Justices concur.*